## LORILLARD *a.* LORILLARD.

*Supreme Court, First District ; General Term, February,* 1857.

RECEIVER.—LEASES BY.—DUTIES OF, RESPECTING TENANT.

A receiver of real estate to lease it and collect the rents and out of them to pay annuities charged upon the land, leased it for twenty years. The tenant, who was insolvent, assigned his whole term, save one day ; and thereafter, the rent having become two years in arrear, an order was made by the special term, on the petition of the receiver, and with the consent of three-fifths, in amount, of the parties interested in the land, authorizing the receiver to accept a surrender of the lease from the assignee, and to execute a new lease to him, at a reduced rent which had been agreed upon by the parties, on the assignee's paying the arrears of rent due from his assignor. There was no proof that the property had fallen in value.

*Held,* On appeal from this order to the general term—1. That the court would not sanction this arrangement.

Lorillard *a.* Lorillard.

2. That, under the circumstances, and upon the facts in proof respecting the value of the property, the only fair test of the value was an auction.

3. That if the assignee would surrender the lease and pay the arrears, he might be discharged from further liability; and in such case the receiver should proceed to lease the premises by auction; but if he would not do this, the receiver should proceed to recover possession of the lands.

4. Whether the assignee of the lease might not be held liable to the receiver for the rents in this case—*Query ?*

5. Whether the court may not grant summary relief against the tenant of a receiver of the court, as being one holding under the court, and subject to its jurisdiction—*Query ?*

Appeal from an order of the special term, authorizing a receiver to accept a surrender of premises leased by him, and to grant a new lease, at a reduced rent.

On the division of the estate of one George Lorillard, certain lots on Broadway and West-street, in the city of New York, were placed in charge of Nicholas Dean, as receiver of the then Court of Chancery, to let the same, and receive the rents and pay expenses; and out of the balance to pay certain annuities, charged by the will of Lorillard upon his real property. One of these lots, No. 212 Broadway, was leased, by the receiver, to one Hudson. An application was made to the court, at special term, by one Davis, the successor of Dean in the receivership, and Francis Morris, assignee of the lease, for an order authorizing the receiver to accept a surrender of the lease, and to make a new one, at a reduced rent. The circumstances on which the application was based appear fully in the opinion of the general term. The application having been granted, the parties interested in the land, and in the annuities charged upon it, now appealed to the general term.

*Benj. T. Kissam,* for the appellants.—I. The receiver ought not to have made this application, nor originated these proceedings. (Woodward *v.* Woodward, *Hayes & J.*, 126 ; Parker *v.* Dunn, 8 *Beav.*, 497; Ireland *v.* Eade, 7 *Ib.*, 55; Richards *v.* Goold, 7 *Irish Eq.*, 209; Callaghan *v.* Reardon, *Sausse & S. Ch. R.*, 682; Robinson *v.* Shearer, *Hayes & J.*, 799.)

II. The court never interferes with the obligations of its tenants, and invariably refuses either to release parties who have made bad speculations, or make any abatement in amount of rent ; (Robinson *v.* Shearer, *Hayes & J.*, 799; Woodward *v.* Wood-

ward, *Ib.*, 126 ; Matter of O'Neill's Minors, *Sausse & S.*, 686 ; Fitzgibbon *v.* Flynn, *Ib.*, 687 ; Evans *v.* Taylor, *Ib.*, 681 ; Davis *v.* Cotter, *Ib.*, 685 ;) even in case the parties interested in the estate do not oppose. (Maguire *v.* Richards, *Sausse & S.*, 690.)

III. The plain and simple duty of the receiver is to collect the rents, and to take such legal measures to compel the payment thereof as may be necessary. (Callaghan *v.* Reardon, *Sausse & S.*, 682 ; Clarke *v.* Fisher, *Ib.*, 684 ; Robinson *v.* Shearer, *Hayes & J.*, 799.) Mr. Morris is the beneficial owner of the lease, has attorned to the receiver, is the tenant of the court, and can be compelled to pay the rent by attachment. (Angell *v.* Smith, 9 *Ves.*, 335 ; Davidson *v.* Armstrong, 1 *Hog.*, 253 ; Nason *v.* Blennerhasset, *Ib.*, 402 ; Newman *v.* Mills, *Ib.*, 291 ; Cane *v.* Bloomfield, *Ib.*, 345.) If for any cause the rent could not be collected from lessee or his assignee, then the receiver should have re-entered at once upon non-payment thereof, under 2 Revised Statutes, 3 ed., 603, § 28.

IV. The arrangement between Mr. Dean and Mr. Morris is contrary to all established rules and principles, and if permitted to become a precedent, would open the door to great frauds, and tend to bring the receiver (as in the present case) in conflict with the very parties whose interests he is appointed to protect.

V. Private arrangements of this character should not be tolerated. If the property is to be again leased for a long term of years, it should be done by a public auction, as at first ; all persons would then have an equal chance, and the true value of the lease ascertained.

VI. On January 12, 1853, a lease for 21 years of the premises in question (then a vacant lot) brought, at public sale, a clear net rental of $14,500 ; the purchaser agreeing to erect a building thereon at a cost of not less than $10,000, to insure, and assign the policy, and to surrender the improvements at the termination of the lease, without compensation. It is certainly reasonable to presume that if a lease of the same lot, with a five-story building thereon, were now put up at public auction, it would bring, at least, a clear net rental of $14,500, with the same covenants as are contained in present lease.

VII. Propriety and expediency should never be made the basis of a judgment of the court, in a case where, on the one hand,

the powers and duties are clear, and well defined by law, and on the other hand, the responsibilities, liabilities, and consequences are equally well defined and established.

VIII. There is nothing whatever in the evidence to show that it is proper or expedient for the receiver to accept Mr. Morris's proposal. On the contrary, there is much to show that it is not proper nor expedient.

*A. P. Man,* for the respondent.—I. It is clearly expedient to make the lease to Mr. Morris; and the order below should be affirmed.

II. The primary consideration in the management of the property is, to provide a safe and *permanent* income to meet the annuities: and this is to be done, *first,* for the security of the annuitants themselves; and *second,* to relieve the other real property of George Lorillard; the annuities being a legal charge upon the whole.

III. More than three-fifths in amount of all the parties in interest have expressly concurred in this application of the receiver. It is not necessary, in such cases, nor can it be expected, that all the numerous parties should consent.

IV. The property is in the *custody of the court,* and the court has entire control over it.

V. There is no force in the suggestion that the receiver should have taken forcible legal possession of the premises before treating for a new lease. That would have violated the arrangement made by Dean, and would have absolved Morris from all obligation to fulfil it on his part. The present arrangement, involving a voluntary surrender of the old lease, is better than to have entered by legal process.

VI. There is no legal question involved in this proceeding; it is simply a question of sound judgment and expediency. Regarded in that light, it is, in every point of view, the most eligible arrangement that can be made. The original lessee is utterly irresponsible; and it is clear that Morris is not liable to the receiver for the arrears of rent now due. Those arrears amount, allowing until February 1, 1857 for the procuring a new tenant, to $15,000; and the payment of this amount, collectable only from Hudson, but which Morris agrees to assume on taking the new lease, are equivalent to a bonus of $15,000 in advance from

Lorillard *a.* Lorillard.

any other tenant, taking from February, 1857 at the terms proposed by the order. This bonus, and the yearly rent of $8,000, are nearly equivalent to a lease for $1,000 for the remaining seventeen years of the term.

By the Court.*—Mitchell, J.—Mr. Dean, the receiver of certain real estate in this cause, pursuant to an order of the court, in January, 1853, executed a lease of the property on the northeast corner of Broadway and Fulton-street, to E. H. Hudson, for twenty years from May 1, following, unless certain annuitants should sooner die, at the annual rent of $4,500, payable quarterly; the lessee to pay all taxes and assessments, and to erect a building to cost at least $10,000, which was to belong to the owners of the land. The building was erected at a cost of about $30,000, probably including in that cost interest and rent during its erection. Francis Morris advanced to Hudson all the moneys expended by him on the premises, and as his security, took an assignment of the lease, in March, 1853, for the whole term, save only one day. The assignment reserves no rent to the assignor;—is for no consideration but $1;—and has, immediately after the *habendum*, a clause as follows : " *subject*, nevertheless, to the *rents*, *covenants*, conditions and provisions therein also mentioned," with a proviso that Morris might surrender at the end of three years. Morris immediately entered into possession, and has collected all the rents; and he paid the annual rent to the receiver to May 1, 1855, inclusive. He found (as is said) that the rents received by him would not pay the ground-rent and taxes, and offered to the receiver, in May, 1855, to surrender the lease and take a new one, at $8,000 a year; and the receiver is said to have agreed to apply to the court for authority to make such arrangement. In August following, Morris paid $2,000, subject to the completion of such agreement. Since that time he has paid nothing, but has received the rents and retained them. Mr. Dean died soon after that date, and the present receiver, Ezra P. Davis, was appointed in his place. In September last he applied to the court for leave to carry out the arrangement proposed by Morris, so as to take effect as of May 1, 1855;—Mr. Morris thus to pay the back rents at the rate of $8,000 a year, and the taxes and assessments.

* Present, Mitchell, Roosevelt, and Davies, JJ.

A little more than three-fifths in interest of the owners of the property concur in the application of the receiver; nearly two-fifths in interest oppose it. The referee and the special term have approved it; still it appears to this court inexpedient to give its assent to such an arrangement. The rent of $14,500 was obtained at auction, some persons bidding $14,000, and others running it up from that sum, by $100 at a time, to the last bid of $14,500. There is no evidence that property has since fallen in value, or that if the same trial by auction should be made, the same rent, or one far exceeding $8,000, could not be obtained; except that witnesses estimate the gross annual rents at from $10,500 to $15,000, and the annual expenses at an average of about $3,750. The same witnesses would probably have put the same estimate on the property before it was leased at auction; and yet persons bid against the lessee to $14,000 and $14,400, and Mr. Morris thought then so favorably of the lease as immediately to take an assignment of it for all the term except one day, as his security for nearly $30,000. As Hudson is, and probably was entirely irresponsible, Mr. Morris must have valued the lease as worth to the lessee more than $30,000. Other persons may estimate it in like manner at auction, or at least think that after the $30,000 are expended on the premises, they can manage it so that it will pay the rent obtained at auction in 1853, before that money was expended on it.

Under these circumstances, the court considers the only fair test of value is an auction.

It is said that Mr. Morris now offers to pay $8,000 per annum, now in arrear for nearly two years, and the taxes and assessments for the same period; and that for his advantage to the estate the three-fifths owners desire to complete the arrangement with him; and that he cannot be made liable as assignee, as the whole term was not assigned to him, and he did not covenant to pay the rent.

It is not necessary to decide whether he could be liable as assignee or not, under the circumstances already detailed, and such others as they afford ground to infer. There is just reason to infer that Hudson was the mere instrument of Morris, and that, in fact, no title of any kind was intended to vest in him. Before his term was to commence he had transferred his interest in it to Morris for the whole period, except one day (the

exception being of no benefit to him, and only intended to save Morris from liability as assignee) ; he never was in possession for a single day, or expended one dollar upon the premises or received one dollar from it.  Morris immediately entered into possession, collected all the rents, and paid all such rent as has been paid to the lessor ; he alone offers to surrender the lease ; he alone has received and kept the rents since May 1, 1855. Whether liable or not, under these circumstances, in the old common law action, as assignee, it is very possible that he may be liable now in a complaint showing all the facts ;—his liability to Hudson, Hudson's irresponsibility, and that the assignment was expressly subject to payment of the rents.  If he could not be made liable after he surrendered the premises, it may be that while he continued in possession of the lands thus received by him expressly subject to the rents, he was bound to Hudson to pay such rents, or, at all events, to apply the rents received by him to such payment; and that, under our present system, the lessor could enforce in his own favor that obligation to Hudson.

So far, the rents being unpaid, ejectment lies to recover the lands ; and as Morris is the person in possession and collecting the rents, may they not be collected from him in the same action under a claim for the mesne profits ?  As he is not a party to these proceedings, the court does not choose to express its opinion definitely on these matters.

To authorize the proposed arrangement would encourage Mr. Morris, and all other persons tenants under a lease sanctioned by this court, first, to refuse to pay their rents; next, to propose to substitute inferior obligations in place of those they had entered into ; and then (as in this case) to urge that, inasmuch as they had taken their measures from the beginning to reap all the benefits of the lease and yet to evade its liabilities, and had kept back rents which they had collected and should have paid over, for nearly two years, it became the interest of the parties to acquiesce ; and they might thus force the parties and the court to submit to their terms.  If Mr. Morris wishes any favorable terms from the court, he should first pay all the rent in arrear at the rate of $3,000 a year, and all taxes and assessments, and surrénder the lease, promising a surrender from Hudson also ; and as it is understood that the parties interested

are willing to accept this inferior sum, then he might be discharged from further liability. The receiver then should immediately advertise the premises to lease, for the residue of the term, at auction, on the same terms as are mentioned in the present lease; except that the lease should require the present building to be sustained or a new one equally good to be erected. Security should also be required for the payment of the rent, &c., either by one or more sureties or by a deposit of some kind.

If Mr. Morris does not consent to this, the receiver should immediately proceed to eject him and the occupants under him by an action to recover the lands and their profits, or in such other way as he may be advised. It is not proper now to say whether the court would not give summary relief against him, as one holding under the court and subject to its jurisdiction.

The order appealed from should be modified accordingly.

## SANGER *a.* VAIL.

*Supreme Court; Newburgh Special Term, October,* 1856.

### TRIAL.—NOTING EXCEPTIONS.

On the trial of a cause, the defendant objected to the competency of a witness offered by plaintiff, and the objection was considered and overruled, but no *exception,* if any was taken, was noted in the judge's minutes.

*Held,* on settlement of a case made by defendant on appeal—1. That it was not necessary in order to entitle him to review the ruling of the court, that he should procure the exception to be formally noted in the minutes.

2. That the affirmative testimony of witnesses that an exception was actually taken, would outweigh the negative testimony of an equal number who testified that they were present at the trial, and that no exception was taken.

Settlement of a case upon appeal.

This was an action upon a note. On the trial the plaintiff offered a witness to prove the handwriting of the maker of the note. The witness was objected to by the defendant; but the objection was overruled by the court, and the witness received.

Judgment being rendered in favor of the plaintiff, the de-